**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DWAYNE DYE,

       Plaintiff,

v.                                                                  Case No. 2:11-cv-13967

WASHTENAW COUNTY SHERIFF
DEPARTMENT, et al.,

       Defendants.

_____/

**ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS AND
TERMINATING AS MOOT PLAINTIFF'S MOTION FOR A BENCH TRIAL**

Before the court is Defendants' motion to dismiss the amended complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The motion has

been fully briefed, and the court finds a hearing to be unnecessary.  *See* E.D. Mich. LR

7.1(f)(2).  For the reasons described below, the court will grant Defendants' motion.

Because the court will dismiss Plaintiff's amended complaint, it will also terminate as

moot Plaintiff's pending motion for a bench trial.

**I. BACKGROUND**

The events giving rise to this suit, as alleged in the amended complaint, occurred

early on the morning of August 17, 2010.  Plaintiff and his girlfriend, Rachel Tiseo, had

been passing the night at "Camp Take Notice," a tenting community of homeless

individuals located in Washtenaw County, Michigan.  At 12:45 a.m., another tenter[1]

---

[1]Throughout the complaint, Plaintiff refers to the inhabitants of Camp Take Notice
as "tenters."  For ease of reference, the court adopts Plaintiff's terminology.

identified as "Kalib" entered Plaintiff's tent "yelling and screaming 'now you are being put out and you must go' in a hostile and threatening manner."  (Am. Compl. 3, ¶ 3, Dkt. # 1.)  Kalib began to tear down the tent, and, when Plaintiff tried to stop him from doing so, he hit Plaintiff in the ear.  Outside of the tent, a "mob of tenters" had gathered, who then "rushed in to assist in taking possession of [Plaintiff's] property."  (*Id.* ¶¶ 6, 8.)  At this point, Plaintiff noticed two deputies of the Washtenaw County Sheriff's Department, later identified as Defendants Joseph Ballard and David Egeler, "standing silently behind the mob of men with their hands on their weapons."  (*Id.* ¶ 7.)  Both Tiseo and Plaintiff appealed to the officers for help stopping the tenters, but neither intervened.  Instead, the deputies told Plaintiff that "[the tenters] can do what they wanted and that [Plaintiff] should leave before something bad happened."  (*Id.* at 4, ¶ 13.)  The officers then escorted Plaintiff out of Camp Take Notice.  Plaintiff later learned that the deputies were present at the request of the tenters, who had asked the Sheriff's Department to send some officers to "stand-by" while they expelled Plaintiff from the encampment.  (*Id.* ¶ 12.)

In the aftermath of this encounter, two "internal investigations" regarding the incident occurred within the Washtenaw County Sheriff's Department, apparently at Plaintiff's behest.  (*Id.* at 2-3, ¶ 13.)  Both concluded that Ballard and Egeler had not acted improperly: Plaintiff received a letter stating that the deputies "had not violated any department policies" during the incident at Camp Take Notice, (*id.* at 4, ¶ 16), and "the Sheriff's personal secretary" told Plaintiff it was the "official policy of the Washtenaw County Sheriff Dept. to let the tenters deal with matters themselves concerning Camp Take Notice," (*id.* ¶ 17).

2

On September 12, 2011, Plaintiff initiated this suit against Defendants Ballard,

Egeler, the Washtenaw County Sheriff Jerry L. Clayton, and Washtenaw County,[2]

seeking damages and injunctive relief based on claimed violations of his Fourth and

Fourteenth Amendment rights.  Defendants filed a motion to dismiss in lieu of an

answer, and Plaintiff responded by filing an amended complaint.  Defendants then

brought the instant, second motion to dismiss Plaintiff's amended complaint for failure to

state a claim under Rule 12(b)(6).  Plaintiff has since filed a motion for a bench trial.

Additionally, Defendants have filed a motion for sanctions against Plaintiff, arguing that

Plaintiff's complaint is frivolous and claiming that Plaintiff has engaged in an improper

"smear campaign" against Defendants. (Defs.' Mot. Sanctions ¶¶ 2-3, 5, Dkt. # 17.)[3]

## II. STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.

Civ. P. 8(a)(2), otherwise it is subject to dismissal under Rule 12(b)(6) for "fail[ing] to

state a claim upon which relief can be granted," *id.* 12(b)(6).  To survive a Rule 12(b)(6)

motion, a complaint need not state "detailed factual allegations."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  However, it must contain more than "labels and

conclusions," *id.*, "a formulaic recitation of the elements of a cause of action," *id.*, or

---

[2]Plaintiff originally named the Washtenaw County Sheriff's Department as the fourth defendant in this action (hence the case caption).  However, he stipulated to the dismissal of that entity in his response to Defendants' first motion to dismiss, and, in the amended complaint, he substituted Washtenaw County in its stead.

[3]The court will address the motion for sanctions at a later date under a separate order.

3

"naked assertion[s]" unsupported by "further factual enhancement," *id.* at 557.  In other words, though "a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

A complaint must allege enough facts that, when assumed true, "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, by "stat[ing] a claim to relief that is plausible on its face," *id.* at 570.  A claim is facially plausible when the plaintiff pleads facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than showing only "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Accordingly, a court takes a "two-pronged approach" when considering a Rule 12(b)(6) motion.  *Id.* at 1950.  First, the court must dismiss "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* Second, if a complaint does present "well-pleaded factual allegations," a court will "assume their veracity" and decide "whether they plausibly give rise to an entitlement to relief."  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Plaintiff is proceeding pro se, so the court holds the complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency, however, "is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Pro se plaintiffs must still abide by "basic pleading standards," and the court is not required "to conjure allegations on a litigant's behalf." *Id.* (internal quotation marks omitted).

### III. DISCUSSION

Though Plaintiff does not specify his cause of action in the amended complaint, his allegations of a constitutional violation signal a claim under 42 U.S.C. § 1983,[4] (*see* Am. Compl. 2, ¶ 7 (alleging Defendants "act[ed] under the color of law")), and he identifies that statute as the basis for his claims in his response to Defendants' motion to dismiss, (*see* Pl.'s Resp. Defs.' 2d Mot. Dismiss 1, Dkt. # 14). "'To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*,

---

[4]Section 1983 provides, in relevant part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

5

437 F.3d 527, 533 (6th Cir. 2006)); *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149,

155-56 (1978).  Because the facts alleged by Plaintiff fail to demonstrate the deprivation

of either his Fourth Amendment right to be free of unreasonable seizures or

his Fourteenth Amendment right to due process of law, he has failed to state a claim

under § 1983.

## A. Fourth Amendment Claim

Plaintiff primarily claims that he suffered a violation of "his fourth amendment [sic]

constitutional right against unreasonable search and seizure."  (Am Compl. 2, at ¶ 7);

*see* U.S. Const. amend. IV ("The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . . .").  Specifically, Plaintiff relies on *Soldal v. Cook County, Illinois*, 506 U.S.

56 (1992), to argue that an unlawful seizure of property occurred when he was expelled

from Camp Take Notice.  As the Supreme Court reiterated in *Soldal*, "[a] 'seizure' of

property . . . occurs when 'there is some meaningful interference with an individual's

possessory interests in that property.'" *Id.* at 61 (quoting *United States v. Jacobsen*, 466

U.S. 109, 113 (1984)).  In that case, the Court determined that a seizure had occurred

when law enforcement officers prevented the plaintiffs from interfering with his

landlord's unlawful eviction of his mobile home from its rented lot, effected when the

landlord's employees hooked the home to a tractor and towed it into the street:

> As a result of the state action in this case, the Soldals' domicile was not only
> seized, it literally was carried away, giving new meaning to the term "mobile
> home." We fail to see how being unceremoniously dispossessed of one's
> home in the manner alleged to have occurred here can be viewed as
> anything but a seizure invoking the protection of the Fourth Amendment.

*Id.*

6

With respect to his displacement from Camp Take Notice, Plaintiff argues that the tenters were required to follow the procedures dictated by Michigan landlord-tenant law prior to expelling him from the encampment, namely, that they could not displace him before procuring a writ of restitution from a Michigan court. *See* Mich. Comp. Laws § 600.5744. Because they failed to do so, he maintains, Defendants were complicit in an unlawful eviction that constitutes a seizure under *Soldal*. Plaintiff's reasoning has one fatal flaw: he has not alleged a possessory interest in his campsite at Camp Take Notice sufficient to trigger the protections of the Fourth Amendment. While the Court in *Soldal* clarified that the Fourth Amendment "protects property as well as privacy," 506 U.S. at 62, it also emphasized that "'at the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home,'" *id.* at 61 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Unlike the *Soldal* plaintiffs, Plaintiff here does not claim Camp Take Notice as his home[5]; he does not even allege that he owns the tent in which he was sleeping on the night when he was turned away. On the contrary, the complaint states that Camp Take Notice is located on property owned by the state of Michigan, and it contains no allegation that Plaintiff or any of the tenters had acquired a legal right to possess the property through a lease, license, or any other means. Plaintiff mistakenly tries to use this fact to his advantage by asserting that the other tenters had no authority to expel him from land they did not own. But, in reality, Plaintiff has no greater right to remain at Camp Take Notice than the other tenters have a right

---

[5]In fact, Defendants allege in their motion for sanctions that, at the time Plaintiff was expelled from Camp Take Notice, he "was not homeless" but "maintain[ed] a residence in Roseville, Michigan." (Def.'s Mot. Sanctions ¶ 1.)

to exclude him or any other individuals, and state officials could force all the tenters to leave the encampment without effecting a seizure under the Fourth Amendment. *Cf. Thomas v. Cohen*, 304 F.3d 563, 582-83 (6th Cir. 2002) (Gilman, J., writing for the court) (noting that, with respect to defendant police officers' eviction of plaintiffs from a homeless shelter, "no published opinion [can be found] anywhere holding that an eviction under these circumstances is a seizure of property for the purpose of the Fourth Amendment," when "the officers did not take physical possession of the property" and "in fact did nothing more than escort plaintiffs from their place of residence").

Plaintiff also makes an unspecified allegation in his complaint that the "mob of all white tenters . . . [took] possession of [his] property" in the course of expelling him from Camp Take Notice, presumably by gathering up his belongings from the campsite in preparation for his departure. (Am. Compl. 3, ¶ 8.) The Fourth Amendment does protect against the unreasonable seizure of one's personal "effects." U.S. Const. amend. IV; *see also Cochran v. Gilliam*, 656 F.3d 300, 307-09 (6th Cir. 2011) (holding that defendant deputy sheriffs violated plaintiff's Fourth Amendment rights by assisting plaintiff's landlord in carting off plaintiff's belongings from a rental property during the course of an eviction). Nevertheless, even assuming Plaintiff has presented a well-pled factual allegation that the tenters took his personal property, he still cannot show that Defendants "meaningful[ly] interfere[d] with [his] possessory interests in that property." *Jacobsen*, 466 U.S. at 113. As the Sixth Circuit has held, "an officer's mere presence at the scene to keep the peace while parties carry out their private repossession remedies does not render the repossession action that of the state." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) (citing *United States v. Coleman*, 628 F.2d 961, 963-64 (6th

8

Cir. 1980)).  Plaintiff alleges no more than Defendants Ballard and Egeler's "mere

presence at the scene" while the tenters gathered his possessions and expelled him

from Camp Take Notice; the police report regarding the incident, filed by Defendants

Ballard and Egeler and quoted by Plaintiff in his response to Defendants' motion to

dismiss, confirms that the deputies "advised [the tenters] we could not take place in their

illegal eviction process, [for] which they had no Writ of Restitution, mandated by law."

(Pl.'s Resp. Defs.' 2d Mot. Dismiss 5.)  In short, Plaintiff has presented no facts

indicating that Defendants took "an active role in [the] seizure or eviction" that could give

rise to a Fourth Amendment violation.  *Cochran*, 656 F.3d at 308; *cf. Soldal*, 506 U.S. at

60 n.6 (declining to review Seventh Circuit's decision that seizure was effected "under

color of state law" when "police prevented [plaintiff] from using reasonable force to

protect his home from private action that the officers knew was illegal"); *Cochran*, 656

F.3d at 308 ("Here, the record contains photos showing at least one of the two

[defendant deputies] carrying items out of the house and helping the Landlords load

[plaintiff's] property into a pickup truck. . . . The [Defendants'] actions place them

squarely within the Supreme Court's reaffirmation that a physical seizure of the property

constitutes a Fourth Amendment violation.").  Under these circumstances, Plaintiff has

not shown that a seizure implicating the Fourth Amendment, under *Soldal* or otherwise,

occurred in the course of his displacement from Camp Take Notice.

### B. Fourteenth Amendment Claim

In his complaint, Plaintiff also asserts that Defendants "violated his 14th

amendment [sic] constitutional right against [sic] due process of the law," (Am. Compl.

2, ¶ 8), though he fails to further develop this argument in his pleadings or his response

to Defendants' motion to dismiss.  *See* U.S. Const. amend. XIV, § 1 ("No State shall . . .
deprive any person of life, liberty, or property, without due process of law . . . .").  To
establish a due-process violation, Plaintiff must first show that he has been deprived of
a liberty or property interest; if he has, he must then demonstrate that the procedures
resulting in that deprivation were constitutionally inadequate.  *See Swarthout v. Cooke*,
131 S. Ct. 859, 861 (2011).  Plaintiff cannot make it beyond the first hurdle.  As
described above, Plaintiff has failed to allege that he had a state-law property interest in
remaining at Camp Take Notice, therefore he has not demonstrated that he suffered a
deprivation of a constitutionally protected property interest when he was expelled from
his campsite.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)
("Property interests, of course, are not created by the Constitution.  Rather they are
created and their dimensions are defined by existing rules or understandings that stem
from an independent source such as state law . . . .").

Furthermore, even if Plaintiff had suffered a deprivation, it did not occur at the
hands of Defendants; rather, it was perpetrated by the tenters.  Plaintiff appears to
argue that Defendants should have stepped in to stop his displacement from Camp
Take Notice, (*see* Am. Comp. 2, ¶ 9), but such an allegation does not present a viable
claim under the Fourteenth Amendment.  "[N]othing in the language of the Due Process
Clause itself requires the State to protect the life, liberty, and property of its citizens
against invasion by private actors."  *DeShaney v. Winnebago Cnty. Dept. of Soc.
Servs.*, 489 U.S. 189, 195 (1989).  Thus, "the Due Process Clauses generally confer no
affirmative right to governmental aid, even where such aid may be necessary to secure
life, liberty, or property interests of which the government itself may not deprive the

10

individual," *id.* at 196, except in "certain limited circumstances," not present here, when "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," *id.* at 198. Plaintiff has failed to show that he was deprived of due process of law in violation of the Fourteenth Amendment.

### C. Claims Against Defendants Clayton and Washtenaw County

The foregoing discussion establishes that, as alleged in the amended complaint, the actions of Defendants Ballard and Egeler, the deputies on the scene during Plaintiff's displacement from Camp Take Notice, did not violate Plaintiff's Fourth or Fourteenth Amendment rights. For this reason, he has failed to state a claim under § 1983 against Defendants Ballard and Egeler, as well as against Defendants Clayton and Washtenaw County.

Plaintiff alleges that Defendant Clayton "endorsed the actions of his deputies by maintaining an official sheriff department policy that knowingly violates the rights of homeless people in Camp Take Notice," (Am. Compl. 2-3, ¶ 13 (internal quotation marks omitted)), which he characterizes as an "official policy of the Washtenaw County Sheriff Dept. to let the tenters deal with matters themselves concerning Camp Take Notice," (*id.* at 4, ¶ 17). He also claims that Defendant Clayton "personally oversaw" the "internal investigations" regarding Plaintiff's expulsion, during which Defendant Clayton "sought to covered-up [sic] material evidence and misdirected the investigations in order to keep officers from receiving consequences for their actions." (*Id.* at 2-3, ¶ 13.) These allegations of Clayton's personal involvement in the incident at Camp Take Notice border on the "naked assertion[s]" unsupported by "further factual enhancement" that the court must reject after *Twombly. Twombly*, 550 U.S. at 557. Regardless, even

11

if the court assumes that Defendant Clayton both propagated a policy dictating Defendants Ballard and Egeler's conduct and oversaw the subsequent investigations of their actions, neither of these acts precipitated any constitutional wrong.  At bottom, Defendants Ballard and Egeler did not violate Plaintiff's constitutional rights.  Therefore, the policies guiding the deputies and the investigations absolving them cannot be considered constitutionally infirm solely because those policies and investigations allowed, or even condoned, their actions.  Plaintiff has not met his burden of pleading that Defendant Clayton, "through [his] own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.

Any claim against Washtenaw County fails for the same reason.  Under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff can sue a local government "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [a constitutional] injury," *id.* at 694.  As Plaintiff has not suffered a constitutional injury, he cannot bring a § 1983 claim against Washtenaw County, regardless of whether the individual Defendants acted in a manner consistent with county policy or custom when dealing with Plaintiff.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendants' second motion to dismiss [Dkt. # 13] is GRANTED.  This case is hereby DISMISSED.

12

IT IS FURTHER ORDERED that, in light of this disposition, Plaintiff's motion for a

bench trial [Dkt. # 16] is TERMINATED AS MOOT.


                                        s/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated:  November 29, 2011


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, November 29, 2011, by electronic and/or ordinary mail.


                                        s/Lisa G. Wagner
                                        Case Manager and Deputy Clerk
                                        (313) 234-5522